(No.75003

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BILLY E. WILLIAMS *et al.*, Appellees.

*Opinion filed January 20, 1994.*

HARRISON, J., joined by FREEMAN and McMORROW, JJ., concurring in part and dissenting in part.

Roland W. Burris, Attorney General, of Springfield, and Charles Garnati, State's Attorney, of Marion (Norbert Goetten, Stephen E. Norris and Kendra S. Mitchell, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, and Michelle A. Zalisko, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellees.

JUSTICE NICKELS delivered the opinion of the court:

The 25 defendants below were charged by uniform Illinois traffic and complaint citations with a variety of misdemeanor offenses including, but not limited to, driving under the influence (Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, par. 11—501), driving on a suspended license (Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, par. 6—303), driving while licensed revoked (Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, par. 6—303), and illegal transportation of alcohol (Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, par. 11—502). The offenses allegedly committed by the 25 defendants are unrelated. In each case, the public defender of Williamson County was appointed to represent defendants. Prior to trial, defendants, through

the public defender, moved to dismiss all charges under the speedy-trial provisions of Supreme Court Rule 505 (113 Ill. 2d R. 505). All motions to dismiss were granted. The cases were joined on appeal because the procedural process involved and the speedy-trial issue were the same in each case, except for defendant Charles Watson, who is discussed separately. The appellate court affirmed the dismissals (No. 5—89—0280 (unpublished order under Supreme Court Rule 23)), with one justice dissenting. This court then granted the State's petition for leave to appeal (134 Ill. 2d R. 315).

The record reveals that defendants were charged with their respective offenses by citations at various times in 1988. The citations directed defendants to appear in court on different dates for their first appearances, but all dates were set between 14 and 49 days after defendants' arrests in accordance with Supreme Court Rule 504 (113 Ill. 2d R. 504). One defendant, Charles Watson, failed to appear on his first appearance date, as he was incarcerated on unrelated charges. All other defendants appeared on their first appearance dates, at which time the public defender was appointed to represent them. After the public defender was appointed, the trial court set arraignments in all cases. The State does not assert, nor does the record indicate, that defendants requested this delay for arraignment. Interrogatories to the trial judge show that he followed this procedure when a defendant faced possible imprisonment for an alleged offense. The State does not claim and the record does not show that the State objected to this procedure. At the time of the arraignments, defendants pleaded not guilty and made jury trial demands. With the exception of one defendant who made a written jury demand, all other demands were made orally. The time between each defendant's arrest and jury trial demand differed in all 24 cases. In four of

the cases, the time between defendants' arrests and defendants' jury trial demands exceeded 120 days. In seven cases, the time between defendants' arrests and defendants' jury trial demands was between 100 and 120 days. In the remaining cases, the time between defendants' arrests and defendants' jury trial demands was between 70 and 100 days. In each case, after a jury trial demand was made, a jury trial date was set beyond 120 days from defendants' arrest, and the public defender moved to dismiss the pending charges against each defendant. On April 4, 1989, the circuit court dismissed all cases now on appeal because more than 120 days had elapsed since the time of defendants' arrests.

Charles Watson was arrested on August 9, 1988, for driving on a suspended license (No. 88—TR—6206) (Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, par. 6—303), and for having no rear registration light (No. 88—TR—6207) (Ill. Rev. Stat. 1987, ch. 95$^1$/$_2$, par. 12—201(c)). He failed to appear for the scheduled court appearance for these charges on September 14, 1988, because he was incarcerated on four unrelated charges that occurred on September 3, 1988. He was not released on bond on the four later charges until October 31, 1988. Counsel was appointed for Watson on October 26, 1988. The State argues that the record fails to disclose that Watson ever demanded a jury trial for No. 88—TR—6206 and No. 88—TR—6207. However, defendant Watson claims that he was arraigned for all charges on November 17, 1988, and the docket minutes for the September 3, 1988, charges show that a jury demand was made. Watson argues that it is reasonable to conclude from this record that the jury demand was made for all charges at that time, including No. 88—TR—6206 and No. 88—TR—6207.

The issue before us is whether a defendant must inform the circuit clerk of his or her decision to plead

not guilty and demand a jury trial at least five days before the first appearance date is scheduled in order to invoke the 120-day speedy-trial requirement of Rule 505. The State argues that a traffic defendant must affirmatively act to invoke his right to a speedy trial by one of two ways. First, a defendant can notify the circuit clerk at least five days prior to his first scheduled court appearance that he intends to plead not guilty and/or to request a jury trial. Failing to do that, a defendant can still file a written demand for speedy trial pursuant to section 103—5 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 103—5). Neither procedure was done here with respect to any of the defendants. Defendants reply that their failure to notify the circuit clerk at least five days prior to their scheduled court appearances of their intent to plead not guilty and demand a jury trial does not result in a waiver of their speedy-trial rights under Rule 505. They claim that they are entitled to a speedy trial once they demand a jury trial.

At the time these offenses were committed, Supreme Court Rule 505 provided the following:

"When issuing a Uniform Citation and Complaint, a conservation complaint or a Notice to Appear in lieu of either, in counties other than Cook, the officer shall also issue a written notice to the accused in substantially the following form:

AVOID MULTIPLE COURT APPEARANCES

If you intend to plead 'not guilty' to this charge, or if, in addition, you intend to demand a trial by jury, so notify the clerk of the court at least 5 days (excluding Saturdays, Sundays or holidays) before the day set for your appearance. A new appearance date will be set, and arrangements will be made to have the arresting officer present on that new date. Failure to notify the clerk of either your intention to plead 'not guilty' or your intention to demand a jury trial may result in your having to return to court, if you plead 'not guilty' on the date originally set for your court appearance.

Upon timely receipt of notice that the accused intends to plead 'not guilty,' the clerk shall set a new appearance date not less than 7 days nor more than 49 days after the original appearance date set by the arresting officer, and notify all parties of the new date and the time for appearance. If the accused demands a trial by jury, the trial shall be scheduled within 120 days of arrest. The proper prosecuting attorney shall be served with any separate written demand for speedy trial under section 103—5 of the Code of Criminal Procedure of 1963, as amended (Ill. Rev. Stat. 1985, ch. 38, par. 103—5). If the accused fails to notify the clerk as provided above, the arresting officer's failure to appear on the date originally set for appearance may, in counties other than Cook, be considered good cause for a continuance. Any State agency or any unit of local government desiring to be exempt from the requirements of this Rule 505 may apply to the Conference of Chief Circuit Judges for an exemption." 113 Ill. 2d R. 505.

Rule 505 has since been amended and now provides that "trial shall be scheduled within a reasonable period" if the accused demands a jury trial. It further states that "[i]n order to invoke the right to a speedy trial, the accused if not in custody must file an appropriate, separate demand, as provided in section 103—5 of the Code of Criminal Procedure of 1963, as amended (Ill. Rev. Stat. 1987, ch. 37, par. 103—5)." 134 Ill. 2d R. 505.

The appellate court concluded that defendants' failure to timely notify the clerk prior to their first court appearance did not relieve the State of its obligation to try defendants within 120 days of arrest when defendants demanded a jury trial. The court relied upon *People v. Mears* (1980), 84 Ill. App. 3d 265, wherein the defendant did not notify the clerk of his intent to plead not guilty, but entered his plea on his first appearance date. The *Mears* court held that the defendant's plea of not guilty on his appearance date was sufficient to invoke the 49-day speedy-trial term for bench trials as required under Rule 505. (*Mears*, 84 Ill. App. 3d at 270;

*contra People v. Honnold* (1989), 191 Ill. App. 3d 340.) The appellate court herein reasoned from *Mears* that the instant defendants did not waive their right to a speedy trial by failing to notify the clerk of their jury-trial demand prior to their appearance date. The court found the 120-day rule mandatory, citing the language in *People v. Rideout* (1990), 193 Ill. App. 3d 884, 890.

The State distinguishes *Mears* on the ground that the defendant there entered his plea on his appearance date, guaranteeing the State 49 days to bring the defendant to a bench trial. (113 Ill. 2d R. 505.) In the cases at bar, no plea was entered nor was a jury demand made on the appearance date by any defendant. Rather, the public defender was appointed and arraignments were set, in some cases beyond 120 days from arrest. The State urges that this court follow *People v. Ware* (1976), 41 Ill. App. 3d 902, wherein the appellate court found that a defendant's failure to make a timely demand for a jury trial, *i.e.,* five days before the appearance date, resulted in a waiver of the speedy-trial provisions of Rule 505. See *People v. Thompson* (1989), 190 Ill. App. 3d 678, 681.

Rule 505 has been amended several times over the years and thus case law interpreting its meaning has varied. The express policy of Rule 505, as well as Rule 504, is to provide a defendant with an early hearing on the merits of his traffic offense and to avoid multiple court appearances, which eliminates undue hardship on the accused, law enforcement agencies and the courts. *People v. McCoy* (1987), 155 Ill. App. 3d 725, 728.

Although Rule 505 may refer to section 103—5 of the Code, it is clear these two provisions relate to distinctly different situations. (See *People v. Rideout* (1990), 193 Ill. App. 3d 884, 889.) A traffic defendant is not required to file a separate written demand for speedy trial under Rule 505. (*Rideout,* 193 Ill. App. 3d at 890.)

The plain language of Rule 505 (113 Ill. 2d R. 505) indicates that when a defendant makes a jury demand, trial must be had within 120 days of the *date of arrest* (*Rideout*, 193 Ill. App. 3d at 890), unlike section 103—5 of the Code where the time is counted from the date of demand. The 120-day rule is mandatory. Thus, a traffic defendant's demand for a jury trial is, *ipso facto*, a demand for speedy trial. See *People v. Lorah* (1986), 142 Ill. App. 3d 163, 164.

While the State does not dispute these conclusions, it claims that there is, in effect, a precondition to a right to a speedy trial in traffic cases, the precondition being that a defendant make demand for a jury trial to the clerk five days before his first court appearance. Failure by a defendant to follow this procedure, according to the State, results in waiver of the 120-day rule and the defendant must file a separate written demand under section 103—5 of the Code in order to invoke speedy-trial rights.

We disagree. Although the rule requires the clerk to set a new appearance date in all cases where a defendant notifies the clerk of an intent to plead " 'not guilty,' " the defendant, complying with the appearance date notice " 'before the judge,' " does not thereby lose all benefits of the rule. (See *People v. Harlin* (1990), 201 Ill. App. 3d 147, 150.) The rights a defendant waives by failing to notify the clerk are limited by the plain language of Rule 505. The rule specifically states that "[i]f the accused fails to notify the clerk as provided above, the arresting officer's failure to appear on the date originally set for appearance may, in counties other than Cook, be considered good cause for a continuance." (113 Ill. 2d R. 505.) If this court had intended that a defendant waived any other rights, including speedy-trial rights, by failing to notify the clerk, the rule would have so stated. In fact, the subsequent amendment to Rule

505, effective August 1, 1989, evidences a realization that that version of Rule 505 applicable to the cases at bar required nothing more of a defendant than to make a jury demand to invoke the 120-day rule. 134 Ill. 2d R. 505.

The State argues that construction of Rule 505 in such a way renders the phrase "[u]pon timely receipt of notice" meaningless, produces absurd results and threatens administrative chaos. The phrase "[u]pon timely receipt of notice" is not rendered meaningless by our decision. The rule sets out the effect upon a defendant should he fail to notify the clerk. Any absurd results which may have occurred in the instant cases could have been avoided had the State objected to the *trial court's* decision to set defendants' arraignment dates several weeks in the future, in some cases beyond 120 days from arrest, thus not permitting defendants to enter their plea or make their jury-trial demand on their first appearance date. And, in view of the amendment to Rule 505, any administrative chaos which may have resulted from the State's failure to object to the court's procedure has been eliminated.

Nor do we find any merit to the State's complaint that the jury demands, except one, were oral and made to the court and not the clerk or State's Attorney. Rule 505 does not require a written demand for a jury/speedy trial. The State does not specifically argue that it was not present when defendants made their jury demand in open court at arraignment, but claims that since the State's Attorney may not be present at arraignment or may not hear a defendant's jury demand, a defendant must give a written speedy-trial demand to the State's Attorney to be effective. This argument by the State rests on the State's premise that a defendant may invoke the speedy-trial rule only by the procedures of section 103—5 of the Code once a defendant fails to

inform the clerk, a premise we have rejected. A defendant is not required to file a separate written demand (see *Rideout*, 193 Ill. App. 3d at 890), but has options under Rule 505 in pleading not guilty (see *Harlin*, 201 Ill. App. 3d at 149). Absent a complaint or proof to the contrary, we can only presume that the State was aware of defendants' jury demands which were noted in the docket minutes.

Therefore, we conclude that, with the exception of Charles Watson in No. 88—TR—6206 and No. 88—TR—6207, the trial court properly dismissed all other defendants based upon speedy-trial violations. While defendant Watson makes an argument to the contrary, the record fails to show that Watson made a jury-trial demand in No. 88—TR—6206 and No. 88—TR—6207, or made a speedy-trial demand under section 103—5, at any time. Watson did not invoke the speedy-trial provisions of Rule 505. Case numbers No. 88—TR—6206 and No. 88—TR—6207 were improperly dismissed and must be reinstated upon remand to the trial court.

Based upon the foregoing, we affirm in part and reverse in part the judgments of the appellate and circuit courts. We remand Nos. 88—TR—6206 and 88—TR—6207 to the circuit court of Williamson County for the purpose of reinstating prosecution.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; causes remanded.*

JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that the two cases against Charles Watson were improperly dismissed and must be reinstated. I would also hold, however, that the charges against the remaining defendants were improperly dismissed and must be reinstated as well.

At the time of the pertinent offenses, Supreme Court

Rule 505 provided that "[i]f the accused demands a trial by jury, the trial shall be scheduled within 120 days of arrest." (113 Ill. 2d R. 505.) In effect, the majority construes this to mean that the mandatory 120-day rule is triggered any time a defendant makes a jury demand, regardless of when and how the demand is made. In taking this position, the majority ignores the rudimentary principle that the terms of a statute must be construed in the context in which they appear. (*People v. Dinger* (1990), 136 Ill. 2d 248, 257.) Following this principle, which is fully applicable to our court rules (134 Ill. 2d R. 2(a), Committee Comments), it is manifest that when Rule 505 referred to a "demand" in the above-quoted passage, it meant the type of demand described in the preceding portions of the rule, namely, a demand which had been filed with the clerk at least five days before the date set for the defendant's appearance.

The majority contends that if our court had intended loss of speedy-trial rights to be a consequence of failure to notify the clerk prior to the appearance date, it would have so stated in the rule. I note, however, that the rule explicitly conditioned a defendant's right to have his trial set within 120 days of arrest upon an appropriate demand for a jury trial, and, as I have just discussed, such a demand, taken in context, meant a demand included in a timely notice to the clerk. Because such a demand was required to trigger the 120-day rule, it necessarily follows that there was no obligation to schedule the trial within 120 days where no demand had been made.

The version of Rule 505 now before us did afford defendants the opportunity to demand a speedy trial even after the five-day advance notice period had expired, but for defendants to avail themselves of that opportunity, they were required to serve a written demand on the prosecuting attorney under section

103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 103—5). Under the majority's analysis, this portion of the rule would be rendered wholly ineffective, for if a defendant could have invoked his speedy-trial rights merely by making an oral demand at arraignment, there would never have been any reason for him to utilize the procedures under section 103—5. Indeed, proceeding under that statute would have been nonsensical. Not only would it have entailed the additional procedural step of having to serve a written notice, it would also have enlarged the time the State had to bring the defendant to trial. This is so for two reasons. First, the speedy-trial period did not begin to run until the date of the demand (for defendants not in custody) under section 103—5, while under Rule 505, it was measured from the time of the arrest. Second, the speedy-trial period for defendants not in custody was 160 days under section 103—5, while under Rule 505, it was only 120 days. Moreover, by dispensing with the procedures specified by section 103—5, a defendant might actually evade prosecution entirely simply by waiting to make his Rule 505 demand until 120 days had elapsed since his arrest, as three of the defendants in this case did.[1]

The majority attempts to avoid responsibility for creating this procedural quirk by faulting the State for having failed to object to the trial court's scheduling of the arraignment dates. Such a view, however, misconceives the State's duty in such cases. While the prosecution clearly has an obligation to see that a defendant is tried within the statutory speedy-trial period once a proper demand has been made (see *People v. Reimolds*

---

[1]The appellate court erroneously added a fourth defendant, William E. Griffin, to this group. A review of the record discloses that Griffin actually made his jury demand 89 days after his arrest.

(1982), 92 Ill. 2d 101, 106), it has no obligation to press for trial where, as was the case on the first arraignment dates, the defendants are not in custody and have not yet made speedy-trial demands. The reason is simple. Where a defendant is not in custody, the speedy-trial rights afforded by State law do not become operative unless and until the defendant demands them. See *People v. Garrett* (1990), 136 Ill. 2d 318, 324.

Because the defendants in this case had neither notified the clerk in advance of their request for a jury trial nor made a speedy-trial demand under section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 103—5), the prosecuting attorney simply had no reason to believe that the trial court's scheduling order posed any speedy-trial problems. To find otherwise would require us to hold either that the State must exercise precognition or else that it has an affirmative obligation to obtain a declaration from defendants at the very outset of a case as to whether or not they intend to assert their speedy-trial rights. Such a notion is as unreasonable as it is unprecedented, especially considering that these defendants were all represented by counsel.

The majority attempts to find support for its position in the fact that Rule 505 was amended subsequent to the events giving rise to this lawsuit, but I see nothing in that amendment which necessarily "evidences a realization that [the] version [applicable here] required nothing more of a defendant than to make a jury demand to invoke the 120-day rule." (158 Ill. 2d at 70.) To the contrary, it seems just as likely to me that the amendment resulted from a belief that the lower courts which had so construed the rule were wrong and that the results they had produced were so muddled that the system had to be overhauled. In any case, as the majority acknowledges, Rule 505 has been amended a number

of times over the last decade, both before and after the version at issue here. In my view, we should be reluctant to use any one particular version of the rule as a guide to construing the others. All the various versions really show is how difficult it has been for us to formulate a procedure which is fair, efficient, and easy to understand.

Finally, I do not believe the court can dismiss the State's concerns over administrative chaos merely by pointing out that the rule is now different. It is axiomatic that rules, as statutes, should not be construed in a way which will lead to absurd or unjust results. Under this principle of construction, the court must test the rule before it according to the circumstances as they existed when the dispute arose. If the court's interpretation of that rule would yield absurd results under those circumstances, it must be rejected, even though subsequent changes in the law meant that the problem would not recur. The subsequent changes do not make the interpretation any less irrational. They merely render it irrelevant. Irrelevance is a good reason for declining discretionary review of a case, but it scarcely justifies adoption of a construction that makes no sense.

For the foregoing reasons, I would reverse as to all defendants and remand with directions to reinstitute the cases against them.

JUSTICES FREEMAN and McMORROW join in this partial concurrence and partial dissent.